# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

*David E. Patton*
Executive Director
and Attorney-in-Chief



Southern District of New York
Jennifer L. Brown
Attorney-in-Charge

August 29, 2018

**BY HAND**

Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street Room 1040
New York, New York 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/9/18

Re: **United States v. Hayim Regensberg**
    S1 08 Cr. 219 (VM)

Dear Judge Marrero,

    I write to request that the Court order early termination of Hayim Regenberg's supervised release. On June 19, 2009, the Court sentenced Mr. Regensberg to 100 months' imprisonment and three years of supervised release. Since his release from custody, Mr. Regensberg has completed approximately 31 months of his 36 month term of supervision and is in full compliance with the terms of his supervision. He has completed substance abuse treatment and abstained from alcohol abuse. He has also addressed his gambling disorder. He has been employed full time for most of the term of supervision but for about two months. He has made regular restitution payments and I am advised by his Probation Officer that he is in full compliance with all terms.

    I have spoken with Mr. Regensberg's probation Officer, Vincent Danielo from the Eastern District of New York, who supervises Mr. Regensberg. He takes no position and defers a decision to the SDNY. I have attempted to contact the Government, by Joan Loughnane, who was the attorney of record on this case, and I am advised that she has recently left the SDNY Office.

Honorable Victor Marrero                    August 29, 2018
United States District Court                Page 2
Southern District of New York

Re: **United States v. Hayim Regensberg**
    **S1 08 Cr. 219 (VM)**

### Background Information

Mr. Regensberg's wife divorced him during the term of his incarceration, primarily due to his conduct in this case, but he met someone else and he remarried in February, 2017. His wife, is an Israeli citizen, and it was recently discovered that she suffers from a mental disorder which requires extensive counseling and medication. She would like to return to Israel for treatment of this disorder where she can be supported by family and because her medical insurance covers treatment only in Israel. She hopes that Mr. Regensberg can accompany her. Early termination would facilitate his ability to travel to and stay in Israel. Her disorder has some particularly dangerous risks, and he would like to be with her during this difficult period of time.

Probation confirms that Mr. Regensberg has complied with all the conditions of his release. In consideration of Mr. Regensberg's stellar progress while on supervised release, his family needs, and the other statutory factors, the Court should order early termination.

### Legal Standard

The Court may terminate an individual's supervised release "at any time after the expiration of one year… if [the court] is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). To make this determination, courts are directed to consider "the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6) and (a)(7)," essentially the same factors a court considers at sentencing. 18 U.S.C. § 3583(e).

Pursuant to this standard, courts have ordered early termination where a defendant has completed a substantial portion of his supervised release, complied with all relevant conditions, completed programming (such as drug treatment), and if he does

Honorable Victor Marrero  
United States District Court  
Southern District of New York  

August 29, 2018  
Page 3  

Re: **United States v. Hayim Regensberg**  
    **S1 08 Cr. 219 (VM)**

not represent a danger to the community.[1] See, e.g., United States v. Chaar, No. 00 Cr. 217 (JGK), 2005 WL 1844773, at *1 (S.D.N.Y. Aug. 3, 2005) (granting early termination where these conditions were met and supervision potentially interfered with work opportunities); United States v. Kapsis, No. 06 Cr. 827 (WHP), 2013 WL 1632808, at *1 (S.D.N.Y. Apr. 16, 2013) (finding early termination warranted based on changed circumstances, including the defendant's steady employment, successful completion of treatment, and lack of law enforcement contact); United States v. Jimenez, Nos. 99 Cr. 1110, 99 Cr. 1193, 2012 WL 3854785, at *2 (S.D.N.Y. Sep. 5, 2012) (granting early termination where defendant had only one year remaining, had performed well on supervised release, and was considering relocation to Florida).

### Discussion

Mr. Regensberg was found guilty after trial of wire fraud and securities fraud. He was sentenced on June 19, 2009 to 100 months incarceration. At the time of this conviction, he had no prior criminal history. Mr. Regensberg voluntarily surrendered to

---

[1] A court is not required to find "exceptional" circumstances to order early termination. That language does not appear in the statute. *United States v. Lussier*, 104 F.3d 32 (2d Cir. 1997), is often cited for this language. However, *Lussier*'s holding concerns the legality of modifying a restitution order post-sentencing. The court did not hold that exceptional circumstances were required for early termination – the only mention of such an idea is when the court noted, in passing, that "[o]ccasionally, changed circumstances-for instance, exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution imposed as conditions of release-will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." *Lussier*, 104 F.3d at 36. To the extent that the Court determines it must find exceptional or changed circumstances here, it should find them based on Mr. Ruiz's full compliance, completion of treatment, educational advancement, and his family situation, including the needs of his ailing father-in-law in Brazil.

Honorable Victor Marrero  
United States District Court  
Southern District of New York

August 29, 2018  
Page 4

Re:  **United States v. Hayim Regensberg**  
     **S1 08 Cr. 219 (VM)**

commence his sentence and was released from custody, beginning supervised release on January 15, 2016.

From the start of his sentence, Mr. Regensberg approached prison as an opportunity for change. Prior to sentencing, he struggled with alcohol abuse and a gambling disorder. He took full advantage of the Bureau of Prisons RDAP program while incarcerated, completing the required 500 hours of programming over nine months of intensive counseling. He has since stopped abusing alcohol and no longer suffers from a compulsive need to engage in gambling. He is grateful that he was able to address his addictions. He did not incur any disciplinary infractions while in prison. Mr. Regensberg entered a halfway house where he spent six months prior to his release on supervision. Within two months of his release, he had a full time job, working in computer software design. His current job, at a higher salary, involves business development for a hardware distributer in a new line of locks and door hardware.

Mr. Regensberg does not have a formal college diploma but he attended the University of Illinois in Chicago for a period of one year from September, 1983 to March, 1984. In April, 1984, until June, 1987, Mr. Regensberg attended Ner Israel Rabbinical College in Baltimore, Maryland. At the same time, he also attended Johns Hopkins University in Baltimore, from 1985 to 1986. His background prior to college involved orthodox religious training at Yeshiva and in Israel. His early education was founded on an orthodox religious upbringing. His grandfather and great-grandfather were both Chief Rabbi's in the Chicago area from 1920 to 1977. His paternal grandfather was a world renowned rabbi who headed the Jewish Ecclesiastical Court of Chicago, as well as the Rabbinical Council of America.

Following his uncontested divorce, which occurred while he was incarcerated, Mr. Regensberg met his current wife and remarried in February, 2017. She is an Israeli citizen. See Exhibit A, Certificate of Marriage. After suffering from several symptoms, Mr. Regensberg's wife was treated at Long Island Jewish Medical Center, Northwell Health, Emergency Room. She was diagnosed with Adjustment Disorder. See Exhibit B. She was advised that she will require medication and extensive follow-up counseling. She was also advised that without treatment, "people

Honorable Victor Marrero  August 29, 2018
United States District Court  Page 5
Southern District of New York

Re: **United States v. Hayim Regensberg**
    **S1 08 Cr. 219 (VM)**

with this disorder are at risk for suicide," and "may develop a more serious mental disorder, such as major depressive disorder or post-traumatic stress disorder." See Exhibit B. She wants to return to Israel for follow-up treatment and because her health insurance would cover the treatment only in Israel. She hopes that her husband will be able to go with her and support her emotionally while there.

Mr. Regensberg's post-release conduct makes him exactly the type of probationer who deserves early termination. He has successfully completed 31 months of his 36 months of supervised release, which would otherwise expire in January, 2019. He is currently subject to low intensity supervision, in which his reporting is at a minimum. He has not merely completed this time, but taken affirmative and exceptional steps towards his own rehabilitation: by his full time employment, stable marriage, and completion of treatment for his addiction. He does not have a long criminal history; he was not convicted of a violent offense; and there is no reason to think that he represents a danger to the public. Supervision is no longer necessary for either his own rehabilitation or the protection of the community. And because Mr. Regensberg's emotional support of his wife is crucial to her treatment and mental health, terminating supervision early will allow him to go to Israel to care for his wife. Under these circumstances, early termination is warranted. Under similar circumstances, Judge Koeltl recently granted early termination for Nelson Ruiz who had completed two of his three years of supervision and wanted to travel to Brazil to care for his sick father. See Exhibit C, United States v. Nelson Ruiz, 12 Cr. 949 (JGK), Court Order.

In a recent Memorandum to all District Court Judges, the Probation office has articulated a policy of promoting an increasing number of early terminations of supervision, particularly in low risk cases like Mr. Regensberg. In fact, they have identified a "presumption" for early termination in those cases with Mr. Regensberg's criteria. See Defense Exhibit D, They note that an outstanding financial penalty, "per se does not adversely affect early termination."

Honorable Victor Marrero　　　　　　　　　August 29, 2018
United States District Court　　　　　　　Page 6
Southern District of New York

Re:  **United States v. Hayim Regensberg**
     **S1 08 Cr. 219 (VM)**

## Conclusion

"Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends…" United States v. Johnson, 529 U.S. 53, 59 (2000). Mr. Regensberg's performance on supervision, his steady employment, lack of ongoing addiction issues, and his family situation all make clear that he has, in fact, successfully reintegrated to his community. For all of these reasons, the Court should find that early termination of Mr. Regensberg's supervised release is in the interests of justice and the Court should order such termination.

Respectfully submitted,

Robert M. Baum, Esq.
Assistant Federal Defender
Tel: (212) 417-8760

cc:  United States Attorney's Office
     Southern District of New York

     USPO Vincent Danielo
     (BY EMAIL)

> Request GRANTED. The supervised release term of defendant Hayim Regensberg is terminated for the purpose of enabling him to accompany his wife for medical treatment in Israel. The termination shall be effective upon his presentation to the Probation Office of travel documentation for both the defendant and his wife.
>
> SO ORDERED:
> DATE 10-9-18    VICTOR MARRERO, U.S.D.J.

HAYIM ASHER REGENSBERG
TEMIMA SARA BENYAMINI
465 5 AVE
CEDARHURST, NY 11516
United States

| | THE CITY OF NEW YORK | License Number |
|---|---|---|
| Q-2017- | OFFICE OF THE CITY CLERK | Q-2017-1521 |
| | MARRIAGE LICENSE BUREAU | |

# Certificate of Marriage Registration

This is to Certify That  HAYIM ASHER REGENSBERG

465 5 AVE  CEDARHURST, NY 11516, United States

at  CHICAGO Illinois  United States

TEMIMA SARA BENYAMINI    New Surname : REGENSBERG

HA-NAVI  BET SHEMESH 3,  Israel

at  NESABAR  Bulgaria

## Were Married

at

508 PENINSULA BLVD
CEDARHURST, NY
United States

...the full registered license and certificate of marriage of said persons on file in this office.

CERTIFIED THIS DATE AT THE CITY CLERK'S OFFICE

Queens                                March  02,   17
N.Y.                                                      20



Facsimile Signature
...printed pursuant
to... 11-A, Domestic
...Law of New York.

Michael McSweeney
City Clerk of the City of New York

Long Island Jewish Medical Center
270-05 76th Avenue
New Hyde Park, NY 11040

 Northwell Health

Emergency Department
(516/718) 470-7500

**CONFIDENTIAL**

Patient Name: **TEMIMASARA BENYAMINI**
Caregiver:

# Adjustment Disorder

Adjustment disorder is an unusually severe reaction to a stressful life event, such as the loss of a job or physical illness. The event may be any stressful event other than the loss of a loved one. Adjustment disorder may affect your feelings, your thinking, how you act, or a combination of these. It may interfere with personal relationships or with the way you are at work, school, or home. People with this disorder are at risk for suicide and substance abuse. They may develop a more serious mental disorder, such as major depressive disorder or post-traumatic stress disorder.

## SIGNS AND SYMPTOMS
Symptoms may include:

- Sadness, depressed mood, or crying spells.
- Loss of enjoyment.
- Change in appetite or weight.
- Sense of loss or hopelessness.
- Thoughts of suicide.
- Anxiety, worry, or nervousness.
- Trouble sleeping.
- Avoiding family and friends.
- Poor school performance.
- Fighting or vandalism.
- Reckless driving.
- Skipping school.
- Poor work performance.
- Ignoring bills.

Symptoms of adjustment disorder start within 3 months of the stressful life event. They do not last more months after the event has ended.

## DIAGNOSIS

©2018 Elsevier Inc.   4/19/2018   3:58:44 PM

Elsevier Interactive Patient Education - TEMIMASARA BENYAMINI, ID: 97478093 MRN 20/55/63

**Long Island Jewish Medical Center**
270-05 76th Avenue
New Hyde Park, NY 11040



**Northwell Health**

Emergency Department
(516/718) 470-7500

**CONFIDENTIAL**

## PATIENT EDUCATION SUMMARY

**Patient/Visit Information:**
| Patient Name | TEMIMASARA BENYAMINI | Diag |
| Attending Caregiver | | |

**Discharge Instruction Sheets Provided:**
NH LIJ ED Discharge Instructions
Adjustment Disorder, Adult

**Patient Instructions:**

Additional Notes for NH LIJ ED Discharge Instructions
Please follow up with your Primary MD in 24-48 hr.
Seek immediate medical care for any new/worsening signs or symptoms.

**Please follow up with your Primary MD in 24-48 hr as needed.**
**Please read the discharge instruction in this packet.**
**Seek immediate medical care for any new/worsening signs or symptoms.**
**1-800 273 TALK Natinal Suicide Hotline**
**1-800 :ife Net Mobile Crisis**

Additional Notes for Adjustment Disorder, Adult
Please follow up with your Primary MD in 24-48 hr.
Seek immediate medical care for any new/worsening signs or symptoms.

**Followup Appointments/Instructions:**

1/1  ©2018 Elsevier Inc.  4/19/2018  3:58:44 PM

If you were prescribed medication today, the name of the medication and instructions on how to take it are below:

_Lexapro 5mg 1 a day_

To continue your treatment, you have an appointment:

_____

Today, you were seen by:
- ☐ Katrina Sandoval, LMSW
- ☒ Linsey Harrison, LCSW
- ☒ Christina Cerdes, MD
- ☐ Edward Redmond, LCSW
- ☐ Qi Ling, MD
- ☐ Other _____

You may contact our peer advocate for questions about your follow-up plan – Peer Advocate: Jacques Noisy 718-470-8301

We may call you in the next few days to follow up.

_(718) NYCWELL_

_516-791-1814 – House_

Behavioral Health
Crisis Center
75-59 263rd Street
Glen Oaks, NY 11004
(718) 470-8300

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 3/20/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

- against -

NELSON RUIZ,

Defendant.

12 Cr. 949 (JGK)

ORDER

---

JOHN G. KOELTL, District Judge:

Nelson Ruiz has completed approximately two years of a three-year term of supervised release. He now seeks an early termination of that period of supervised release pursuant to 18 U.S.C. § 3583(e)(1). The government and the defendant's probation officer take no position on the application.

In deciding whether to grant an application for early termination of supervised release, a court must consider the factors listed at 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). See 18 U.S.C. § 3583(e).

Ruiz has shown a sufficient basis for early termination. He completed his term of incarceration with a successful completion of a substance abuse treatment program. Since he has been on supervised release, Ruiz has obtained employment and has been completed his college education. Continued supervised release has unusually restrictive conditions for Ruiz because he wishes to travel abroad to visit his father-in-law, who is seriously

ill. The reporting requirement from abroad would be particularly onerous.

Ruiz does not appear to pose a danger to the community, and the rehabilitative goals of supervised release appear to have been satisfied.

On balance, Ruiz has shown that his period of supervised release should be terminated.

The application for termination of supervised release is granted.

**SO ORDERED.**

Dated:     New York, New York
             March 20, 2018

                                                              John G. Koeltl
                                              **United States District Judge**



# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK
# PROBATION OFFICE

## MEMORANDUM

**TO:** District Court Judges

**FROM:** Michael J. Fitzpatrick          *Michael J. Fitzpatrick*
Chief United States Probation Officer

**RE** Early Termination From Probation and Supervised Release

**DATE:** March 5, 2018

I am writing to inform that the Probation Department has been working with the United States Attorney's Office and the Office of the Federal Defender to identify a more systematic approach to identify persons under supervision who may be appropriate for early termination from supervised release or probation. The statutory authority for the court to terminate a term of supervised release is derived from Title 18 USC 3583(e)(1), while the authority for the court to terminate a term of probation is derived from Title 18 USC 3564 9(c).

Early termination from probation or supervised release for appropriate cases is supported by both the Judicial Conference and the Administrative Office. The most recent study of early terminations was released by the Criminal Law Committee of the Judicial Conference in 2013. This report revealed that early-terminated offenders were arrested within three years at approximately half the rate of their counterparts who served full terms (i.e. 10.2 percent for early terminated offenders vs. 19.2 percent for similarly situated full term offenders).

There are several reasons for implementing this program. In recent years the federal probation system has adopted an evidence based approach to supervising persons placed on supervised release or probation. The system uses the Risk-Needs-Responsivity (RNR) model, and as part of this model a number of persons who are defined as low risk have been transferred to low risk

caseloads. This practice has allowed the Probation Department to focus more of its resources on higher risk cases.

Now that we have several years of experience in supervising persons under supervision as part of our low risk caseload, we believe we now have sufficient evidence to begin recommending that supervision be terminated for a number of these cases. Over the past three fiscal years, individuals who have been classified as low risk have seen their supervision terms revoked at an extremely low rate. In fiscal year 2015, the revocation rate was 1.7%; in fiscal year 2016, the rate was 1.6%; and in fiscal year 2017 the rate was 3.6%. The overall revocation rate for cases in these years was 20.6%, 21.6%, and 25.2% respectively.

In fiscal year 2017, at the national level, the rate of closed cases that were closed by early termination was 14.3%. Within the 2nd Circuit, the districts that had the highest rate of cases which were closed by early termination were Vermont at 15.5%, and the Northern District of New York at 13.7%. The early termination rate in the Southern District of New York was 6.6% (66 cases).

Although it is difficult to predict the exact number of cases that will receive early terminations, if we use the national average as a benchmark, our district would have seen an increase of 76 cases.

The Probation Department will review cases which meet the presumption for recommending early termination, as defined in 18 USC 3564(c) and 35839(e)(1) (attached as Appendix A). After doing so, the Probation Department will advise the United States Attorney's Office and the defense attorney of our intention for recommending an early termination from supervision. After obtaining feedback from all parties, the Probation Department will submit a petition to the court requesting that early termination be granted.

Please contact me if you have any questions regarding this initiative.

Appendix A

### Criteria

The appropriateness of early termination should be based on the releasee's compliance with all conditions of supervision and overall progress in meeting supervision objectives or making progressive strides toward supervision objectives specific to the releasee that exhibit stable community reintegration (e.g., residence, family, employment, health, social networks) during the period of supervision and beyond. These objectives should be detailed in the supervision plan which should include an evolving, individualized outcome-based plan of action.

According to Monograph 109 § 380.10:

Under 18 U.S.C. §§ 3564(c) and 3583(e)(1), the court may terminate terms of probation in misdemeanor cases at any time and terms of supervised release or probation in felony cases after the expiration of one year of supervision if satisfied that such action is warranted by the conduct of a releasee and is in the interest of justice. (Note: Early termination of parole cases is governed by the United States Parole Commission Rules and Procedures Manual, section 2.43.)

There is a presumption in favor of recommending early termination for probationers and supervised releasees:

1. Who have been under supervision for at least 18 months and

(A) are not career violent and/or drug offenders (as described in 28 U.S.C. § 994(h)), sex offenders, or terrorists,

(B) present no identified risk to the public or victims, and

(C) are free from any moderate (see: Guide, Vol 8E, § 620.40.20) or high (see: § 620.40.30) severity violations; and

(2) Who have been under supervision for at least 42 months and

(A) are not career violent and/or drug offenders (as described in 28 U.S.C. § 994(h)), sex offenders, or terrorists, and

(B) are free from any moderate (see: Guide, Vol 8E, § 620.40.20) or high (see: § 620.40.30) severity violations

Moderate and high severity violations are listed in an attachment to this policy.

Officers should consider the suitability of early termination for releasees as soon as they are statutorily eligible. *A determination of suitability for early termination should be addressed and documented at the first annual case plan (at the 18 month-mark) and not less than yearly thereafter. Lower risk cases should be given special consideration and priority for early termination.*

The general criteria for assessing whether a statutorily eligible releasee should be recommended to the court as an appropriate candidate for early termination are as follows:

1. Stable community reintegration (e.g., residence, family, and employment);

2. Progressive strides toward supervision objectives and in compliance with all conditions of supervision;

3. No aggravated role in the offense of conviction, particularly large drug or fraud offenses;

4. No history of violence (e.g., sexually assaultive, predatory behavior, or domestic violence);

5. No recent arrests or convictions (including unresolved pending charges) or ongoing, uninterrupted patterns of criminal conduct;

6. No recent evidence of alcohol or drug abuse;

7. No recent psychiatric episodes;

8. No identifiable risk to the safety of any identifiable victim; and

9. No identifiable risk to public safety based on the Risk Assessment.

The existence of an outstanding financial penalty, per se does not adversely affect early termination eligibility as long as the releasee has been paying in accordance with the payment plan.

Once the above is demonstrated, the following considerations must also be made:
1. A releasee must demonstrate a minimum of 12 months sobriety and successful participation or completion of substance abuse treatment, if required.

2. A releasee must have demonstrated mental and emotional stability, and has complied with mental health treatment, if required.

3. A releasee must have demonstrated compliance with payment schedules regarding all court ordered financial penalties, including fines, restitution and special assessments **and** have a payment satisfaction plan in place with the Financial Litigation Unit (FLU) of the U.S. Attorney's office.

4. A releasee must not pose a threat to the community ( e.g., sexually assaultive, or other predatory behavior)